**Roger Ellis HESTER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

June 11, 1987.

Rehearing Denied Sept. 3, 1987.

Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Frankfort, Tom Castlen, Commonwealth's Atty., 6th Judicial Dist., Owensboro, for appellee.

LAMBERT, Justice.

Appellant appeals to this Court as a matter of right from the judgment of the Daviess Circuit Court sentencing him to forty years imprisonment for three counts of sodomy in the first degree, and three counts of sexual abuse in the first degree. The persons against whom appellant is alleged to have committed these crimes are his stepdaughters, ages nine years and seven years.

In April of 1985, these children informed their teachers that they had been sexually abused by appellant. An investigation was undertaken and during the investigation, the children repeated their accusations to social workers and a police officer. During the police investigation, a videotaped statement was taken in which the children detailed the incidents of sodomy and sexual abuse. At trial, the Commonwealth produced the testimony of the teachers and a social worker who repeated the stories told by the children. The Commonwealth also produced the police officer who testified as to the information the children had given him, and during the officer's testimony, the Commonwealth was permitted, over objection, to play the videotape for the jury.

When the children were called as witnesses, however, they flatly denied that appellant had committed any act of sexual abuse against them. Both children stated that they had made up the story in order to have appellant temporarily removed from their home so that they could see their natural father. One child attributed her detailed knowledge of the acts of sexual abuse to information provided by a young friend, but this was denied by the young friend and her mother.

After the children's testimony, the Commonwealth called a family sociologist as a witness. The Commonwealth established that this witness held a masters degree in sociology with a specialty in family sociology; that she was a full-time professor at Kentucky Wesleyan College; and that she had participated in a number of workshops and seminars dealing with child sexual abuse. Over appellant's objection to the qualifications of the witness and the substance of her testimony, the court permitted the witness to testify, in part, as follows:

Children do not usually have a lot of details in—when they are—tell something like this unless it has actually happened,.... When they have given specific details to adults, generally—well almost universally this has happened to them. One of the reasons children often will say later it didn't happen is because the family has put pressure on them either verbally, or by their actions to be loyal to the family.

Appellant contends that the trial court erred in permitting the expert witness to testify. He argues that the Commonwealth failed to establish the scientific reliability of the expert opinion; that the witness in question was not shown to be an expert in her field; and that her testimony constituted improper bolstering of the children's out-of-court statements. In essence, appellant contends that the testimony of the expert witness was introduced to persuade the jury that the children had told the truth initially, and were lying in court, and that such constitutes an opinion on the ultimate issue of fact. The Commonwealth responds that the witness was shown to be an expert; that her testimony did not violate *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985) and *Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986); and that her testimony was based only on a hypothetical question which summarized facts properly in evidence.

We are at once confronted with our recent decision in *Lantrip* wherein an expert was permitted to testify that the victim fulfilled the guidelines of the "sexual abuse accommodation syndrome" and the elements which comprised such. We reversed in *Lantrip* holding that the so-called "sexual abuse accommodation syndrome" had not attained scientific acceptance; that even if such were scientifically accepted, a question would remain as to whether other children who had not been sexually abused would also develop the same symptoms or traits. We held that the trial court erred in admitting this "expert opinion." While the phrase "sexual abuse accommodation syndrome" was not used in the case at bar, we fail to see any

significant difference between the testimony given in *Lantrip* and this case.

In *State v. Logue*, 372 N.W.2d 151 (S.D. 1985), the defendant's conviction was reversed for the improper admission of expert testimony similar to that given in the case at bar. As in this case, there was no medical evidence of abuse, and a social worker was permitted to testify as to the source of the victim's knowledge of sexual matters. In response to this, the Court stated:

> In the instant case, we believe that the admission of the social worker's "expert" opinion as to the source of the victim's sexual knowledge was, indeed, objectionable, but not "merely because it embraced an ultimate issue of fact." ...
>
> ... [W]ithin the context of a criminal trial, "[s]cientific or expert testimony particularly courts the [danger of undue prejudice or of confusing the issues or misleading the jury] because of its aura of special reliability and trustworthiness." ... Permitting the social worker in this case to testify as an "expert" that it was her opinion that the alleged victim gained his sexual knowledge from having sex with appellant, lent a stamp of undue legitimacy to her testimony ... We believe that the possibility of prejudice substantially outweighed the probative value of this testimony, and that the trial court clearly abused its discretion in admitting it.

In the case at bar, the evidence against appellant consisted of out-of-court statements made by the children. Appellant's testimony and the children's in-court testimony, if believed, exonerated appellant of any wrongdoing. The admission of the expert opinion was improper as it, in effect, told the jury to believe the story the children had initially told and disbelieve the testimony given in open court. In *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985), we held that a clinical psychologist should not be permitted to testify that the defendant lacked the state of mind required to commit the crimes with which he was charged. We said:

An opinion as to whether the accused had the ability or propensity to commit such an act is improper because it is an opinion on the ultimate fact, that is, innocence or guilt. Consequently it invades the proper province of the jury. Such an opinion is not evidence of mental condition but is a factual conclusion of the witness on the ultimate issue before the jury which can be reached only by consideration of all the facts.

We believe the rule in *Pendleton* is as applicable to the Commonwealth as it is to the defendant. Expert opinion which purports to resolve the ultimate issue before the jury is inadmissible.

Appellant also contends that the trial court erred in allowing the introduction of the videotape. He argues that permitting the Commonwealth to play the videotape prior to the children's testimony is in violation of *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969) and CR 43.08. The Commonwealth responds that *Jett* and CR 43.08 do not apply; that the videotape was introduced pursuant to KRS 421.350(2). This case was tried prior to our decision in *Gaines v. Commonwealth*, Ky., 728 S.W.2d 525 (1987). In view of *Gaines*, upon retrial, we do not anticipate any difficulty with this issue. The children's prior inconsistent statements, including the videotape, should be permitted only after a proper foundation is established as required by *Jett*.

For the foregoing reasons, the judgment of the trial court is reversed with directions to grant appellant a new trial.

All concur.