Carl Buford SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 94–SC–397–MR.

Supreme Court of Kentucky.

Nov. 22, 1995.

As Modified on Denial of Rehearing
May 23, 1996.

Bruce P. Hackett, Deputy Appellate Defender of the Jefferson District Public Defender, Louisville, for appellant; Daniel T. Goyette, Jefferson District Public Defender, of counsel.

Chris Gorman, Attorney General, Lana Grandon, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

FUQUA, Justice.

On August 25, 1992, Detective William Stanley [hereinafter Stanley], a member of

the Louisville Police Department's Crimes Against Children Unit (CACU) arrested the appellant pursuant to a warrant alleging his sexual molestation of F.T., his step-grand-daughter. At the time of the arrest, Stanley orally advised the appellant of his *Miranda* rights and later advised him of his rights in writing at the CACU office which the appellant then waived in writing.

Stanley then specifically informed the appellant of one of the charges against him. The appellant responded, "I can't say I didn't do those things, but I want to speak to an attorney." At that point Stanley stopped his questioning and took the appellant to jail for booking, since his attorney was unavailable. While en route to jail, the appellant tried to re-open the discussion about the charges against him. Stanley informed the appellant that since he had requested the assistance of counsel, Stanley could not discuss the case with him any further.

After arriving at the jail, Stanley placed the appellant against a wall and went across the room to speak with another officer. Stanley then noticed a brief conversation between Officer Childress, a corrections officer, and the appellant. After the conversation, Childress walked over to Stanley and inquired as to why the appellant was under arrest. While Childress was standing with Stanley and another officer, the appellant voluntarily walked up to the officers and allegedly said, "One good thing about being here is I can't do it to anyone else." Childress then asked the appellant, "Are you telling me you did these things?" The appellant replied, "I'm a sick person," and then walked away. Appellant later returned and stated, "The first case I think I could prove I wasn't guilty, but this case is just a little seven year old girl. She is only about this high and I am a rotten son of a bitch." The appellant disputed the content of these alleged statements.

At trial, the prosecution called F.T. as its first witness. F.T. testified in detail as to many things she had already conveyed to Detective Stanley and others. On cross-examination, the defense tried to bring out inconsistencies between F.T.'s statements at trial and her statements to Stanley. Subse-

quently, the Commonwealth called Stanley whose extensive testimony reiterated that to which F.T. had already testified. The appellant objected to Stanley's testimony as it was not within the limited scope of hearsay admissible under KRE 801A(a)(2) as a prior consistent statement.

Ultimately, the jury convicted the appellant of two counts of first-degree sodomy and one count of sexual abuse. A total sentence of twenty-four (24) years' imprisonment was imposed and the appellant now appeals as a matter of right.

■ The appellant's most important contention is that the trial court committed reversible error by permitting Detective Stanley to testify about prior consistent statements by F.T. which only served to bolster the credibility of F.T.'s trial testimony. The Commonwealth, on the other hand, argues that the trial court did not err in admitting the testimony since appellant's theory of the case (that F.T.'s story was fabricated and continued "growing") opened the door for the Commonwealth to rebut the allegation. The Commonwealth further asserts that any error in admitting the prior consistent statement was harmless.

■ This court has continuously held that the hearsay testimony of social workers is inadmissible and constitutes reversible error because it unfairly bolsters the testimony of the alleged victim. *Sharp v. Commonwealth*, Ky., 849 S.W.2d 542, 546 (1993); *Brown v. Commonwealth*, Ky., 812 S.W.2d 502, 503–504 (1991); *Mitchell v. Commonwealth*, Ky., 777 S.W.2d 930 (1989); *Reed v. Commonwealth*, Ky., 738 S.W.2d 818, 821–822 (1987); *Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987); *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139, 141 (1985).

The rationale behind prohibiting hearsay testimony in situations involving social workers is appropriately applicable to the present case of a police detective relating prior statements by the victim. The testimony of Detective Stanley was highly prejudicial because it only served to bolster F.T.'s credibility. In addition, the testimony lacked probative value because F.T. had already ef-

fectively testified. Basically, Stanley's testimony was unnecessary because no dispute existed as to what F.T. alleged since she had adequately stated it in the courtroom and in front of the jury.

■ Moreover, the recent Supreme Court ruling in *Tome v. U.S.*, 513 U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), suggests Stanley's testimony would have been admissible only if F.T. had made statements to Stanley before her motive for fabrication existed. This case strengthens the long held rule in Kentucky set forth in *Eubank v. Commonwealth*, 210 Ky. 150, 275 S.W. 630 (1925), that generally

> a witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony. Where, however, a witness has been assailed on the ground that his story is a *recent* fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the matter when the motive did *not* exist, *before* the effect of such an account could be foreseen, or when motive or interest would have induced a different statement, is admissible. (Emphasis added.)

*Id.*, at 633. Clearly, F.T.'s motive remained the same from the start of the investigation and through the trial. Thus, given the lack of probativeness of Stanley's testimony and the consistency of F.T.'s motive, the admission of Stanley's testimony as a prior consistent statement constitutes reversible error.

■ Secondly, the appellant contends that the trial court committed reversible error in admitting, over objection, several of the appellant's statements while in police custody. The appellant believes that these statements should not have been admitted for constitutional, procedural, and evidentiary reasons.

Appellant allegedly made the following statements while at the jail intake area. "One good thing about being in here, I can't do it to anyone else." "I'm a sick person." The appellant's constitutional rights were not violated since the appellant made the statements after invoking his *Miranda* rights, because the appellant voluntarily reinitiated contact with the police and made

these statements. The appellant, on the contrary, argues that once he asserted his fifth amendment right to counsel, the initiation of further conversation with him was absolutely forbidden until counsel was made available. Basically, the appellant contends that the Commonwealth had the burden to overcome the presumption that the appellant's statements were not voluntary.

■ The Commonwealth, on the other hand, argues that the issue of whether the subsequent waiver of fifth amendment rights is valid should be viewed under the two-prong test set forth in *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). The two-prong test in Smith includes: (1) Whether the accused clearly invoked his right to counsel, and (2) Whether the accused voluntarily "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith*, 469 U.S. at 95, 105 S.Ct. at 493, 83 L.Ed.2d at 494. If so, such statements are valid and admissible.

■ The appellant's fifth-amendment right to silence was not violated, because he voluntarily waived it. The U.S. Supreme Court has held that even where a defendant has invoked his right to silence and counsel, those invoked rights may subsequently be partially waived if "the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 386 (1981). At the time of the statements, the appellant was not being interrogated. "Had Edwards initiated the meeting ... nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary statements and using them against him at the trial." *Edwards*, 451 U.S. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 387. As soon as the appellant requested counsel, which was before any actual questioning began, all discussion initiated by Stanley ceased and the appellant was taken directly to jail. Moreover, when the appellant tried to re-open discussion about the case, Stanley reiterated that he could no longer discuss any part of the case with the appellant until he was represented by counsel. The informed **ap-**

pellant, not Stanley or any other officer, initiated further discussion of the charges. The U.S. Supreme Court clarified this rationale in *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1984) by stating that the word "initiation" should be construed in the "ordinary dictionary sense of the word." *Bradshaw*, 462 U.S. at 1045, 103 S.Ct. at 2835, 77 L.Ed.2d at 412. Using this broad interpretation, the appellant in this case clearly "initiated" further discussion with the police.

Thus, in light of the appellant's voluntary initiation of discussion with the police, the appellant validly waived his fifth amendment rights as to the incriminating statements he made and, as such, his statements were properly admitted.

■ The appellant also raises procedural questions, under RCr 3.02, as to why his statements should be excluded. However, because no "unnecessary delay" occurred in bringing the appellant before the judge, RCr 3.02 was not violated. Furthermore, "unnecessary delay" should not invalidate any confession or statements made by the appellant during this period, unless coercive tactics were used. *Reeves v. Commonwealth*, Ky., 462 S.W.2d 926 (1971); *Carson v. Commonwealth*, Ky., 382 S.W.2d 85 (1964); *Commonwealth v. Mayhew*, Ky., 178 S.W.2d 928 (1944). Appellant has failed to raise such allegations before this Court on appeal.

■ Finally, the appellant cites KRE 404, pertaining to other crimes evidence, as grounds for the exclusion of his statement, "The first case I think I could prove I wasn't guilty, but this case is just a little seven year old girl. She is only about this high and I am a rotten son of a bitch." It should be noted that the Commonwealth redacted the appellant's fourth statement to exclude any references to other criminal activity. After fourteen days, however, the appellant elected to let the jury hear the entire statement, including references to the previous crime. Since the appellant elected to let the jury hear these statements, he cannot now complain that they were improperly admitted. *Hendron v. Commonwealth*, Ky., 487 S.W.2d 275 (1972).

For the aforementioned reasons, this Court reverses the trial court's admission of Detective Stanley's testimony concerning prior consistent statements of the alleged victim witness under KRE 801A(a)(2), but affirms the trial court's admission of Detective Stanley's testimony relative to the appellant's statements while in police custody. It is, therefore, ORDERED that this cause be, and same hereby is, REMANDED to the Jefferson Circuit Court for further proceedings consistent herewith.

STEPHENS, C.J., STUMBO, J., and LEVIN, S.J., concur.

LAMBERT, J., concurs in result only.

WINTERSHEIMER, J., dissents by separate opinion, in which REYNOLDS, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from that part of the majority opinion which reverses the conviction because the trial judge admitted the testimony of a police detective concerning prior consistent statements of the alleged victim-witness pursuant to KRE 801A(a)(2). The trial judge did not commit reversible error in permitting the detective to testify about the statements made to him by the alleged victim.

It was an integral part of the defense theory that the story of the victim had grown from the time she was first questioned about the abuse and denied that anything occurred, to statements to her mother, to various social workers and finally to the police. The defense theory was that the victim was fabricating her story as she spoke of various details to different persons while being questioned about the abuse. Smith cross-examined the victim about the inconsistencies and the growing nature of her allegations and continued this theory in his closing argument.

The defense theory opened the door for the prosecution to rebut the allegations of a growing and therefore untruthful story in order that the jury would be properly provided with the best possible understanding of what was actually said and for no other

purpose. *Cf. Hendron v. Commonwealth,* Ky., 487 S.W.2d 275 (1972).

The testimony of the police was not unfairly prejudicial and did not unnecessarily bolster the statement of the victim under the circumstances.

I would affirm the conviction in all respects.

REYNOLDS, J., joins in this dissent.